AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )  Case No.   19-1200M |
| INFORMATION ASSOCIATED WITH FACEBOOK USER | ) |
| ID 100006276969178 THAT IS STORED AT PREMISES | ) |
| CONTROLLED BY FACEBOOK INC | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____January 6, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____DUTY MAGISTRATE_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   December 23, 2019  4:10 pm                    _____
                                                                                                            *Judge's signature*

City and state:      Brooklyn, New York                    Hon. Peggy Kuo            U.S.M.J.
                                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    19-1200M | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100006276969178 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend"

requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, 2252A, and 2423 involving JONATHAN DEUTSCH since 2013, including, for the Facebook ID identified on Attachment A, information pertaining to the following matters:

(a) The receipt, distribution, purchase, production or solicitation of child pornography, including communications with purported minors evidencing an effort to persuade, entice, induce or coerce them into producing or creating child pornography;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

3

(d) The identity of the person who created or used the user ID, including records that help reveal the whereabouts of such persons.

(e) The identity of the persons who communicated with the user ID about matters relating to the solicitation or production of child pornography, including records that help reveal their whereabouts.

ML:MEF
F.# 2018R00823

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100006276969178 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC | **APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (FACEBOOK ACCOUNT)**<br><br>Case No. 19-1200 M |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, MATTHEW DERAGON, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI").  I have been employed as a Special Agent since 2014, and I am currently assigned to the Criminal Division of New York.  While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation and child pornography.  I am now assigned to the FBI's Violent Crimes against Children Squad (the "Squad"), which investigates individuals suspected of being involved in the online sexual exploitation of children.  As part of my duties as a member of the Squad, I investigate violations relating to child exploitation and child pornography, including violations pertaining to the production, possession, distribution, and receipt of child pornography as well as the transportation of minors and interstate travel to engage in illicit sexual conduct, in violation of Title 18, United States Code, Sections 2251, 2252, 2252A and 2423.  I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections

2

2251, 2252 and 2252A have been committed by JONATHAN DEUTSCH ("DEUTSCH").
There is also probable cause to search the information described in Attachment A for
evidence, instrumentalities, contraband and/or fruits of these crimes, further described in
Attachment B.

## DEFINITIONS

5.      For the purposes of the requested warrant, the following terms have the
indicated meaning in this affidavit:

      a.   The terms "minor," "sexually explicit conduct" and "visual depiction," are
           defined as set forth in Title 18, United States Code, Section 2256; and

      b.   The term "child pornography" is defined in Title 18, United States Code,
           Section 2256(8) in pertinent part as "any visual depiction, including any
           photograph, film, video, picture, or computer or computer-generated image or
           picture, whether made or produced by electronic, mechanical, or other means,
           of sexually explicit conduct, where . . . the production of such visual depiction
           involves the use of a minor engaging in sexually explicit conduct. . . ."[1]

## PROBABLE CAUSE

### I.  Background Regarding Investigation

6.      On or about November 14, 2017, the New York City Police Department
("NYPD") received a "Priority Level 1" notification report (highest urgency) from the

---

[1] See also Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002) (analyzing
constitutional validity of the definitions set forth in 18 U.S.C. § 2256(8)).

National Center for Missing and Exploited Children ("NCMEC") Cyber Tipline, identified as Tip No. 25544679, informing the NYPD that Facebook Inc. had identified a 33-year old adult male named Jonathan Deutsch who was enticing multiple children to send and produce, via social media accounts, pornographic content. Facebook reported that DEUTSCH was likely a math teacher, teaching at Gramercy Arts High School in New York, NY, and utilized the email address JDeutsch@schools.nyc.gov. Facebook also reported that DEUTSCH was using several Facebook accounts, including those under the aliases "Sam Morgan" and "Jay Stern."

7.      On or about November 28, 2017, the Honorable Jonathan Hecht of the Supreme Court of the State of New York authorized a search warrant that allowed police officers of the NYPD to search the records of Facebook for property associated with DEUTSCH's various accounts from January 1, 2017 to the present date (the "First Facebook Search Warrant" (redacted copy attached as Exhibit C)). One of these accounts was under the name "Jay Stern" with Facebook User ID 100006276969178 (hereinafter the "TARGET ACCOUNT").

8.      Thereafter, Facebook produced the requested documents, which contained records for the TARGET ACCOUNT from January 1, 2017 to November 29, 2017.

9.      According to information received pursuant to the First Facebook Search Warrant, the TARGET ACCOUNT was registered on July 5, 2013. Based on the same records, the user of the TARGET ACCOUNT purported to be a 33-year-old teacher from New York. Based on further investigation, DEUTSCH has several email addresses associated with the "Jay Stern" alias, including guyfrombrooklyn83@hotmail.com,

4

guyfrombrooklyn83@yahoo.com, jay.stern.315@facebook.com,

jaytheman3151982@gmail.com, jaystern31583@gmail.com, and

jayjaystern315@gmail.com.

10.     According to information received pursuant to the First Facebook Search

Warrant, during conversations on Facebook messenger, DEUTSCH, utilizing the TARGET

ACCOUNT, among others, requested and received numerous sexually exploitative images

and videos of children and sent numerous photos of what he represented was his own penis.

Additionally, DEUTSCH often instructed the minors to pose in certain positions, to

masturbate and touch their own genitalia, and to send him videos and pictures of the same.

11.     For instance, on or about and between January 4, 2017 and February 4, 2017,

both dates being approximate and inclusive, DEUTSCH, utilizing the TARGET ACCOUNT,

communicated with John Doe 1, who was 13 years old and identified as transgender at the

time.[2]  At the onset of their conversation, DEUTSCH said, "what's up?" and John Doe 1

responded, "Not much just got out of detention hbu [how about you]."  DEUTSCH

responded, "nm, missed you...why do you keep ignorning [sic] me?"  Thus, based on the

context of this conversation, there is probable cause to believe that DEUTSCH and John Doe

1 exchanged messages prior to January 4, 2017, and by extension prior to January 1, 2017,

i.e., the first date from which the government has records for the TARGET ACCOUNT.

12.     Thereafter, on or about January 13, 2017, DEUTSCH repeatedly asked John

---

[2] The government located John Doe 1 and interviewed her, confirming that she
was indeed a minor at the time of the referenced communications.

Doe 1 for a sexy picture.  In response, John Doe 1 sent three images of her bare chest and one image of her vagina in which her fingers spread her labia exposing his clitoris.  As part of their broader communications, DEUTSCH informed John Doe 1 that he was a teacher and into drugs and children.

13.     Similarly, on or about and between January 3, 2017 and February 20, 2017, both dates being approximate and inclusive, DEUTSCH, utilizing the TARGET ACCOUNT, communicated with Jane Doe 1, who was 16 years old at the time.[3]  At the onset of their conversation, DEUTSCH said, "hi <3" and Jane Doe 1 responded, "Why didnt you ever text me back."  DEUTSCH responded, "sorry, got busy and then was away for the weekend with no internet."  Thus, based on the context of this conversation, there is probable cause to believe that DEUTSCH and Jane Doe 1 exchanged messages prior to January 3, 2017, and by extension prior to January 1, 2017, i.e., the first date from which the government has records for the TARGET ACCOUNT.

14.     Between January 3, 2017 and February 20, 2017, Jane Doe 1 sent DEUTSCH several sexually exploitative images and videos, including one where, per the explicit instructions of DEUTSCH, she urinated in a cup and drank the urine.  More specifically, on or about January 23, 2017, DEUTSCH told Jane Doe that he was horny, and Jane Doe 1 sent a video of herself undressing to fully nude and then rubbing her vagina.  On or about January 24, 2017, DEUTSCH engaged Jane Doe 1 in a highly explicit sexual conversation involving

---

[3] The government located Jane Doe 1 and interviewed her, confirming that she was indeed a minor at the time of the referenced communications.

role play, in which Jane Doe 1 was a little girl and DEUTSCH was teaching her about how to have sex.  As part of that conversation, Jane Doe 1 sent DEUTSCH a video of herself masturbating.  As part of their broader communications, DEUTSCH informed Jane Doe 1 that he was a middle-school math teacher.

15.     On December 29, 2017, the NYPD executed a search warrant at DEUTSCH's home and placed him under arrest.   At that time, NYPD seized a number of electronic devices, including DEUTSCH's Apple MacBook.  A review of the Apple Macbook revealed evidence that corroborated the information obtained from Facebook and other entities.   For example, forensic evidence indicates that DEUTSCH maintained copies of the various penis pictures sent to his minor victims on the Apple MacBook.

16.     In or about April of 2018, the NYPD referred the instant investigation to the Federal Bureau of Investigation.  As part of that referral, the FBI obtained the results of the First Facebook Search Warrant.

17.     Based upon my review of the results of the First Facebook Search Warrant, I have concluded that DEUTSCH utilized Facebook to contact hundreds of apparent minors in an effort to identify potential victims.  It appears that he did this by joining Facebook groups in which the members identified as young, often socially outcast children, and utilizing chat rooms affiliated with the same types of groups.  Moreover, based on my review of these records, there is probable cause to believe that DEUTSCH began doing this prior to January 1, 2017, the first date from which law enforcement has records for the TARGET ACCOUNT.

18.     On September 17, 2018, DEUTSCH was charged by indictment in this district

7

with five counts of producing child pornography, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e) (the "Indictment").  That same day, the Honorable Robert M. Levy issued a warrant for DEUTSCH's arrest.  On September 19, 2018, DEUTSCH was arrested in his home.   DEUTSCH is currently detained pending trial in this matter (No. 18-CR-502 (FB)).

19.     On December 16, 2019, I served a preservation request on Facebook for the TARGET ACCOUNT and received confirmation of the same.

**II. Background Regarding Facebook**

20.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

22.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns

8

a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

23.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at

9

particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

26.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

27.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

10

28.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

29.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

32.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

33.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the

Marketplace.

34.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

35.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

36.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

37.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any

12

payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context

13

of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

40.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B,

14

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

41. Based on the forgoing, I request that the Court issue the proposed search warrant.

42. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

43. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

MATTHEW DERAGON
SPECIAL AGENT
FEDERAL BUREAU OF
INVESTIGATION

Subscribed and sworn to before me on ___December 23_____, 2019 by telephone

Honorable Peggy Kuo
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

15

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100006276969178 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

>              To the extent that the information described in Attachment A is within the
possession, custody, or control of Facebook Inc. ("Facebook"), including any messages,
records, files, logs, or information that have been deleted but are still available to Facebook,
or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is
required to disclose the following information to the government for the user ID listed in
Attachment A:

(a)      All contact and personal identifying information, including full name, user

identification number, birth date, gender, contact e-mail addresses, Facebook

passwords, Facebook security questions and answers, physical address

(including city, state, and zip code), telephone numbers, screen names,

websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's

posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos

uploaded by any user that have that user tagged in them;

(d)      All profile information; News Feed information; status updates; links to

videos, photographs, articles, and other items; Notes; Wall postings; friend

lists, including the friends' Facebook user identification numbers; groups and

networks of which the user is a member, including the groups' Facebook

group identification numbers; future and past event postings; rejected "Friend"

requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252, 2252A, and 2423 involving JONATHAN DEUTSCH since 2013, including, for the Facebook ID identified on Attachment A, information pertaining to the following matters:

(a) The receipt, distribution, purchase, production or solicitation of child pornography, including communications with purported minors evidencing an effort to persuade, entice, induce or coerce them into producing or creating child pornography;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

3

(d) The identity of the person who created or used the user ID, including records that help reveal the whereabouts of such persons.

(e) The identity of the persons who communicated with the user ID about matters relating to the solicitation or production of child pornography, including records that help reveal their whereabouts.

# **EXHIBIT C**

KSC *1030*

# SUPREME COURT OF THE STATE OF NEW YORK
## PART MISC, COUNTY OF KINGS

▓▓▓▓▓▓ IN *P. Daly*

STATE OF NEW YORK )
                    ) - ss.:
COUNTY OF KINGS   )

20 *17*

████████████████ Shield Numb██ ████ of the Special Investigations Division, being duly sworn, deposes and says:

1.     I am a detective employed by the New York Police Department and I have been a police officer for approximately twelve (12) years. I have been assigned to the Special Investigations Division for approximately three (3) years. My current responsibilities include, *inter alia*, the investigation of the promotion of sexual performance by a child through the use of electronic devices and the internet, as well as investigating the possession and distribution of child pornography through the use of electronic devices and the internet. During my service with the Special Investigations Division, I have conducted over sixty (60) investigations into the sexual exploitation of minor children through the use of the internet. I have also been involved in the execution of approximately forty (40) search warrants.

2.     My training includes, the following:

    a. I have participated in over twenty (20) interviews involving subjects who have discussed the methods by which they engage in the possession, storage and distribution of child pornography.

    b. I have received specialized training in the area of "on-line" criminal investigations, including the investigation of internet sexual predators, and the production, possession, and distribution of still and video images depicting underage children engaged in sexual activity or sexual conduct, and/or the lewd depiction of the genitals of these underage children, especially when these illicit images are transmitted or received over the internet. I have received training in the area of computer evidence and handling computer forensics, including the ability to conduct forensically sound "field previews" of computers suspected of being involved in the aforementioned types of criminal activity.

3.     This affidavit is made in support of an application for a search warrant to authorize police officers of the New York City Police Department to search the records of Facebook Inc., for the property described below in Paragraph 5.

4.     I state that based on my training and experience, there is reasonable cause to believe that property constituting evidence of an offense, unlawfully possessed, that has been used or is possessed for the purpose of being used to commit or conceal of the commission of an offense against the laws of this State or another State, and/or evidence that tends to demonstrate that an offense was committed or a particular person participated in the commission of an offense, specifically, Promoting a Sexual Performance by a Child (P.L. § 263.15), Possessing a Sexual Performance by a Child (P.L. § 263.16) and related charges, which occurred in Kings County, New York, will be found within and upon the records of Facebook, Inc. related to the accounts associated with the following URLs:

http://www.facebook.com/people/James-Benjamin/100015668078667 ("subject Facebook Account 1"),

http://www.facebook.com/profile.php?id=100016938766073 ("subject Facebook Account 2"),

https://www.facebook.com/jdeutsch1?lst=36402882%3A47101549%3A1511196868 ("subject Facebook Account 3"), and

http://www.facebook.com/jay.stern.315 ("subject Facebook Account 4"), collectively, "subject Facebook accounts"

Prepared by ADA ████████
November 28, 2017
LEAU SW Nos. ████████████████

including but not limited to user identity, name, postal code, country, user id, e-mail address, date of account creation, login records including IP addresses, the hardware and software used to access Facebook, including make, model, operating system, OS version, application information, mac addresses, serial numbers, cookies, telecommunications carrier, MEID, ESN, IMSI, SIM, IMEI, and any other identifiers or device information, logs showing IP Address and date stamps for account accesses, any and all stored electronic and wire communications and information, including email, instant messaging, or other communications, contents of any and all postings, private messages in the user's inbox, private messages in trash mail, and sent mail folders, stored user files, photos or videos uploaded to their profile, including the EXIF metadata, EXIF tags, timestamps, geolocation data, and other users' comments, classified advertisements, historical private message header information, messages posted on Facebook forums or in Facebook groups, private journals or blogs, address book, calendar contents, attachments, vanities and wall posts, user passwords, friend listing with name and Facebook ID number for the period beginning **January 1, 2017 to the present.**

5. Based on my training and experience, I believe the following cyber-property sought and to be seized from within and upon the aforementioned records of Facebook Inc. consists of:

a. documents containing information about the operation and ownership of a personal computer(s);

b. video and/or photographic images common in the production, use and distribution of child pornography;

c. computer-related information including, but not limited to, websites, e-mail addresses, IP addresses and screen names used to obtain or possess child pornography or images and videos relating to or demonstrating a sexual interest in children;

d. identification of computer software systems, including programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs;

e. records and materials, in any format or media, pertaining to the payment for or possession, receipt, transmission, shipment, or distribution of visual depictions of minors engaged in sexually explicit conduct or relating to or demonstrating a sexual interest in children;

f. records, in any format or media, identifying persons transmitting any visual depiction of minors engaged in sexually explicit conduct or relating to or demonstrating a sexual interest in children;

g. records, in any format or media, evidencing ownership or use of computer equipment, software, or the Internet including, but not limited to, sales transactions, registration records, records of payment for Internet access, records of payment for other online subscription services;

h. any and all data, information, or images evidencing Internet usage history;

i. any and all data, information, or images that evidence ownership and use of the access device, including, but not limited to, calendar entries, e-mail addresses, stored telephone numbers and names, nicknames, and/or labels assigned to said numbers, photographs, videos, bank account documents, bills and invoices, recorded voice memos, text messages, instant messenger messages, letters, and stored voicemails;

j. any and all data, information, or images evidencing passwords that may be used to unlock or decrypt data, information, or images stored on the device, which may or may not be stored in a locked or encrypted fashion, whether said passwords are letters, numbers, characters, words, or data strings (sequence of characters);

k. any and all images, Internet histories, Internet site bookmarks, search requests, temporary Internet files, cookies, newsgroups, postings to newsgroups, folder structures and names, and file names stored on the device relating to child pornography (visual depictions of minors engaged in sexual conduct as defined in Penal Law §263.00[3]) or a sexual interest in children;

l. e-mail containing writing regarding child pornography or a sexual interest in children;

m. evidence of affiliations, memberships, buddy lists, profiles, chat sessions, chat services, billboards, newsgroups, and websites pertaining to child pornography or a sexual interest in children;

n. any and all records and materials, in any format or media (including, but not limited to, e-mail, instant message chat logs, electronic messages, other digital data files, and web cache information), identifying persons transmitting any visual depiction of minors engaged in sexually explicit conduct or demonstrating a sexual interest in children;

o. records of communication between individuals concerning the topic of child pornography, having sex with children, the existence of sites on the Internet that contain child pornography or that cater to people with an interest in child pornography, or membership in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to their members and constituents;

p. records of correspondence and communication with known and identified underage minor children;

q. evidence of any online storage, e-mail, or other remote computer storage subscription, including, but not limited to, unique software relating to such subscription, storage, or email, user logs, archived data that shows connection to such service, or user login and password for such service;

r. any and all data, information, or images evidencing or revealing the unauthorized use of the device by a person other than an owner or authorized user, through the use of viruses, Trojan horses, or other malicious software or infiltration methods.

6.      With respect to the stored electronic data, information, and images contained in said Facebook Inc. records described above, it is also requested that this Court grant permission to retrieve the above-described data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

7.      This affidavit is based on my training, experience and personal observations, and information supplied to me from sources mentioned in the paragraphs below.

8.      Based on my training and experience, including my interviews with suspects regarding collections of child pornography, I have become very familiar with the methods used by individuals to obtain, store, and trade in child pornography, including the following:

a. People who collect and trade in child pornography typically do not destroy or delete image or video files depicting child sexual abuse.

b. Collectors of child pornography typically retain their materials and related information for many years. These individuals retain their material indefinitely for the purpose of sexual gratification and sharing with others.

Prepared by ADA ███████████
November 28, 2017
LEAU SW Nos ███████████

c. Individuals in possession of files containing sexual abuse are likely to save and maintain these files on their computer, portable storage devices, or in the cloud so it is accessible to them in their home or office.

d. Because of the illegality and the severe social stigma child pornography images carry, these individuals hide them in secure places, such as hidden files on the hard drive of the computer, external storage media or cloud storage.

e. I have experience and knowledge in the methods of communications that may be utilized through a computer, including but not limited to emails, chat rooms, instant messaging, peer to peer networks, as well as basic skills in the recording and storage of online communications.

f. Files are maintained indefinitely on a computer and/or in the cloud.

g. Deleted files can usually be recovered during a forensic examination.

9. One of the goals of the investigation is to determine whether there are other persons within this jurisdiction possessing or distributing child pornography and ultimately identify any persons who are engaged in the direct exploitation of children by creating and publishing child pornography. Lists of emails addressed, buddy lists, and telephone numbers of persons they have contacted whether as potential victims or persons who share similar interests and materials are frequently maintained on their computers and storage media, as well as on their cell phones, electronic calendar/address books, personal communication service devices, social media accounts, and the cloud.

10. With a computer connected to the internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of ways, including modem, local area network, wireless and numerous other methods.

11. Any computer accessing the Internet is assigned a unique Internet Protocol (IP) address. An IP address is a set of numbers which identify a specific computer on the internet. IP addresses follow the format of a series of sixteen numerals, which are organized in four groups of three numerals that are separated by a period, or: ###.###.###.###, wherein each of the number are between 0 and 255. Computers use IP addresses to identify each other on the Internet. Thus, because a computer accessing "Outlook" (Microsoft) must be connected to the Internet, that device is identifiable by its IP address. Thus, investigators are able to determine the IP address of any computer using Microsoft services by issuing a subpoena to Microsoft. Then, investigators can search a public database compiled by the American Registry of Internet Numbers to determine the Internet Service Providers ("ISP") assigned to that specific IP address.

12. When a subscriber of an ISP wishes to access the internet via their service, the ISP will assign that account an IP address which identifies that account holder on the internet. By providing the ISP with the dates, times and IP addresses which a suspect used to access the internet, the ISP will be able to provide the identifying information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.

13. On or about November 15, 2017, I received a "Priority Level 1" notification report (highest urgency) from The National Center for Missing and Exploited Children ("NCMEC") Cyber Tipline, identified as Tip No. 25544679, informing me that Facebook Inc. had identified a 33-year old adult male named "Jonathan Deutsch" ("perpetrator") who was enticing multiple children to send and produce, via social media accounts, pornographic content. Facebook Inc. reported that based on the conversations between this perpetrator and the child victims, and the social media profiles of the perpetrator and the victims, the perpetrator may be a math teacher, possibly teaching at Gramercy Arts High School in New York, NY. Facebook Inc. further reported a connection between the aforementioned pornographic communications with an email address of JDeutsch@schools.nyc.gov in that the perpetrator used this NYC schools email address to register the aforementioned URL https://www.facebook.com/jdeutsch1?lst=36402882%3A47101549%3A1511196868, subject Facebook Account 3, and that this NYC schools email is registered to the domain GramercyArtsHS.org.

14.    I am informed by the official records of the New York State Department of Motor Vehicles and the New York State Education Department that the perpetrator, Jonathan Deutsch, resides at 2785 West 5th Street, Apartment 12C, Brooklyn NY.

15.    Pursuant to investigation, I learned that the I.P. address linked to these illegal communications is geo-located to Brooklyn NY.

16.    I am further informed by NCMEC that the aforementioned address is the domicile of Jonathan Deutsch, and was his current address on the date their report was made, November 15, 2017.

17.    I am further informed by Facebook Inc. that the following children, both males and females, were engaged by the perpetrator in pornographic communications, and the identifying information of said minors, and the recent dates and times of those communications; other identifying information has been omitted from this application:

Child Victim
Name ███████
Email Address: ████████████████
Profile URL: https://www.facebook.com/profile.php?id ████████████
11-13-2017 03:30:00 UTC

Child Victim
Name ██████
Email Address: ████████████
Screen/User Name: ███████
Profile URL: https://www.facebook.com/ ████████
11-14-2017 02:25:00 UTC

Child Victim
Name ██████
Email Address: █████████████
Screen/User Name: ████████
Profile URL: https://www.facebook.com/ ████████
02-20-2017 00:28:00 UTC

Child Victim
Name ██████
Email Address: ████████████
Screen/User Name: █████████
Profile URL: https://www.facebook.com ██████████
11-14-2017 13:37:00 UTC

Child Victim
Name ███████
Screen/User Name: ██████████
Profile URL: ███████████
11-11-2017 00:30:00 UTC

Child Victim
Name ██████
Email Address ███████████████
Screen/User Name: █████████████

Prepared by ADA ██████
November 28, 2017
LEAU SW Nos. ███████████

Profile URL: https://www.facebook.com/██████████
10-19-2014 14:27:00 UTC

Child Victim
Name: ██████████
Email Address: ██████████
Screen/User Name: ██████████
Profile URL: https://www.facebook.com██████████
11-14-2017 03:49:00 UTC

Child Victim
Name: ██████████
Screen/User Name: ██████████
Profile URL: https://www.facebook.com/██████████
11-06-2017 23:07:00 UTC

and Facebook Inc. further reported to NCMEC that the adult subject of their investigation is:

User or Person Being Reported
Name: Jonathan Deutsch
Address: New York, NY US
Phone: 347-439-5824
Email Address: deutsch.jonathan@gmail.com
Screen/User Name: jdeutsch1
ESP User ID: 47101549
Profile URL: https://www.facebook.com/jdeutsch1
IP Address: 69.124.40.137

18. I am further informed by Facebook, that the person of "Jonathan Deutsch," the perpetrator, has a total of four (4) Facebook accounts under different names and profiles. I am further informed by Facebook Inc. that Facebook was able to link these profiles to each other, and back to Jonathan Deutsch by analyzing machine cookies and IP addresses from which the illicit communications were sent and received.

19. I am further informed by Facebook that the four Facebook profiles linked to perpetrator Jonathan Deutsch are:

- "James Benjamin" using Subject Facebook Account 1;

- "Sam Morgan" using Subject Facebook Account 2;

- "J. Deutsch" using Subject Facebook Account 3; and

- "Jay Stern" using Subject Facebook Account 4

20. The content of the communications between Jonathan Deutsch, sent from and between the aforementioned aliases of Jonathan Deutsch, includes:

In conversations between "Jay Stern" and ██████████, the minor identified herself as 16 years old, and the perpetrator responded that she is not too young. Jay Stern continues by describing himself as a 33-year old middle school math teacher. Jay Stern further states - daddy got an interesting offer that he turned down today, in which a student told him that her younger sisters wanted to learn about sex. The minor replies - I'm the only girl daddy likes and if they try to take

Prepared by ADA ██████████
November 28, 2017
LEAU SW Nos. ██████████

you I will tear them apart. Jay Stern responds- but they were little...it was so exciting. The minor then asks - Daddy do you have snapchat, stay right here I have a surprise, whereupon the minor sent a number of nude photographs of herself and fully nude videos of the minor masturbating herself in various different positions.

In conversations with one of the aforementioned male minors, the content includes the perpetrator stating -he wants to drain the minor's cock in the perpetrator's mouth. In other conversations, the perpetrator states, in sum and substance, just wear sum thin shown of your tits and strip, I wanna c u looking sexy, that the minor should send the perpetrator a video of the minor masturbating and "squirting," and do something to get the perpetrator nice and hard.

21. I am further informed by Facebook that the majority of these illicit communications occurred between 2016 and 2017, and involved minors between the ages of 15 and 17 years.

22. Based on my training, experience, and gathered intelligence, I have observed the following:

- Facebook accounts contain two types of information, one type, which is accessible to general public, the other type that is protected by a privacy wall and only accessible to individuals who are allowed such access by the account holder;

- Facebook accounts are used by individuals to communicate with one another, post photographs and other personal information, exchange messages, e-mail and disseminate other communications including photographs and videos.

- Facebook pages and other social media are known to be frequently used by individuals involved in child pornography, particularly as a forum to attract and communicate with minors who are typically avid users of social media platforms.

23. Based on the foregoing, my training and experience as a detective, NYPD intelligence, and Facebook inquiries already conducted, the records within and upon the subject Facebook accounts will contain evidence of criminal activity, namely communications related to the above-mentioned possession and transmission of child pornographic images.

24. I believe that the requested records are material and relevant in the above-mentioned investigation in that the records will contain stored communications related to the above-mentioned crimes.

25. Based on the foregoing, there is probable cause to believe that the subject Facebook accounts contain evidence of criminal activity.

I request that any examination by this Court be incorporated into this application. I further request that this application and minutes of any examination conducted by this Court be sealed except for one copy, which will be maintained by the Kings County District Attorney's Office until needed for the prosecution resulting from the execution of this warrant.

I request that the Court orders Facebook, Inc. not to disclose the existence of this Order or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise directly by the Court.

I also request that the Court authorize a search for the internet browsing history, keyword searches, stored documentation, file images, addresses, pages and any other electronic information, photo images (including video images), any information concerning computer passwords, encryption, web-sites, screen names or electronic mail addresses, any deleted files and all images, databases of personal identification information and contact list, any data related to the crimes described herein, and any other data which would indicate ownership or use of the searched Subject Facebook Inc. Accounts concerning the identification of individual(s) involved in said crimes;

Prepared by ADA █████████
November 28, 20██
LEAU SW Nos. ███████████

I also request that the search continue past the recovery of the first pertinent records and documents in any format, including electronically stored data and/or communications, information, images, text messages, e-mails, instant messages, contacts (names, addresses, telephone numbers, e-mail addresses), and continue until all such pertinent electronically stored evidence is recovered;

I also request that in the event that during the execution of the warrant with regards to the search of the Subject Facebook Accounts, it is necessary to utilize the assistance of others with expertise in decoding and/or obtaining password protections and/or encryptions, and in transferring, downloading, converting, dumping or draining the contents of the Subject Facebook Accounts, such expert assistance may be sought and that such experts may be members of law enforcement organizations, industry trade associations, or from companies which host these telecommunications.

**WHEREFORE**, I respectfully request that the Court issue a warrant and Order of seizure in the form annexed, authorizing the search of the above-stated property, specifically Facebook, Inc. records for the subject accounts, for the period beginning **January 1, 2017 to present**, and directing that if such property or evidence or any part thereof be found, that it be seized and brought, or an inventory thereof, before the Court, together with such other and further relief that the Court may deem proper.

No prior application in this matter has been made.

Sworn to before me
Brooklyn, New York
November 28, 2017
Time:

Detective ███████
Shield Number ███████
NYPD Special Investigations Division

HON. J̶O̶N̶A̶T̶H̶A̶N̶ HECHT
Justice, Supreme Court
██████████        NOV 2 8 2017

_____
COURT REPORTER

Prepared by ADA ███████
November 28, 2017
LEAU SW Nos ███████

KSC *1030*

### SEARCH WARRANT
### SUPREME COURT OF THE STATE OF NEW YORK
### PART MISC, COUNTY OF KINGS

20 *17*

In the name of the People of the State of New York:
To any police officer of the City of New York:

Proof by affidavit and the stenographical recorded testimony having been made this day before me by ████████████████, of the NYPD Special Investigations Division, that there is reasonable cause to believe that property constituting evidence of an offense, that has been used, or is possessed for the purpose of being used to commit or conceal the commission of an offense against the laws of this State or another State, and/or evidence that tends to demonstrate that an offense was committed or a particular person participated in the commission of an offense, specifically Promoting a Sexual Performance by a Child (P.L. § 263.15), Possessing a Sexual Performance by a Child (P.L. § 263.16), which occurred in Kings County, New York will be found within and upon the records of Facebook, Inc. related to the accounts associated with the following URLs:

http://www.facebook.com/people/James-Benjamin/100015668078667
http://www.facebook.com/profile.php?id=100016938766073
https://www.facebook.com/jdeutsch1?lst=36402882%3A47101549%3A1511196868
http://www.facebook.com/jay.stern.315,

for the period beginning **January 1, 2017 through the present.**

You are therefore commanded to make an immediate search, without prior notice of authority or purpose, at any time of the day or night, the reason for such being that the property to be searched and seized is of an electronic nature, and include any and all of the following:

a. user identity, name, postal code, country, user id, e-mail address, date of account creation, login records including IP addresses, the hardware and software used to access Facebook, including make, model, operating system, OS version, application information, mac addresses, serial numbers, cookies, telecommunications carrier, MEID, ESN, IMSI, SIM, IMEI, and any other identifiers or device information, logs showing IP Address and date stamps for account accesses, any and all stored electronic and wire communications and information, including email, instant messaging, or other communications, contents of any and all postings, private messages in the user's inbox, private messages in trash mail, and sent mail folders, stored user files, photos or videos uploaded to their profile, including the EXIF metadata, EXIF tags, timestamps, geolocation data, and other users' comments;

b. classified advertisements, historical private message header information, messages posted on Facebook forums or in Facebook groups, private journals or blogs, address book, calendar contents, attachments, vanities and wall posts, user passwords, friend listing with name and Facebook ID number;

c. video and/or photographic images common in the production, use and distribution of child pornography; computer-related information including, but not limited to, websites, e-mail addresses, IP addresses and screen names used to obtain or possess child pornography or images and videos relating to or demonstrating a sexual interest in children;

d. identification of computer software systems, including programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs; records and materials, in any format or media, pertaining to the payment for or possession, receipt, transmission, shipment, or distribution of visual depictions of minors engaged in sexually explicit conduct or relating to or demonstrating a sexual interest in children;

1



LEAU SW NO ████
Prepared by ADA ████

e. records, in any format or media, identifying persons transmitting any visual depiction of minors engaged in sexually explicit conduct or relating to or demonstrating a sexual interest in children;

f. records, in any format or media, evidencing ownership or use of computer equipment, software, or the Internet including, but not limited to, sales transactions, registration records, records of payment for Internet access, records of payment for other online subscription services; any and all data, information, or images evidencing Internet usage history;

g. any and all data, information, or images that evidence ownership and use of the device, including, but not limited to, calendar entries, e-mail addresses, stored telephone numbers and names, nicknames, and/or labels assigned to said numbers, photographs, videos, bank account documents, bills and invoices, recorded voice memos, text messages, instant messenger messages, letters, and stored voicemails; any and all data, information, or images evidencing passwords that may be used to unlock or decrypt data, information, or images stored on the device, which may or may not be stored in a locked or encrypted fashion, whether said passwords are letters, numbers, characters, words, or data strings (sequence of characters); any and all images, Internet histories, Internet site bookmarks, search requests, temporary Internet files, cookies, newsgroups, postings to newsgroups, folder structures and names, and file names stored on the device relating to child pornography (visual depictions of minors engaged in sexual conduct as defined in Penal Law §263.00[3]) or a sexual interest in children;

h. e-mail containing writing regarding child pornography or a sexual interest in children; evidence of affiliations, memberships, buddy lists, profiles, chat sessions, chat services, billboards, newsgroups, and websites pertaining to child pornography or a sexual interest in children;

i. any and all records and materials, in any format or media (including, but not limited to, e-mail, instant message chat logs, electronic messages, other digital data files, and web cache information), identifying persons transmitting any visual depiction of minors engaged in sexually explicit conduct or demonstrating a sexual interest in children; records of communication between individuals concerning the topic of child pornography, having sex with children, the existence of sites on the Internet that contain child pornography or that cater to people with an interest in child pornography, or membership in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to their members and constituents; records of correspondence and communication with known and identified underage minor children;

j. evidence of any online storage, e-mail, or other remote information storage subscription, including, but not limited to, unique software relating to such subscription, storage, or email, user logs, archived data that shows connection to such service, or user login and password for such service;

k. any and all data, information, or images evidencing or revealing the unauthorized use of the device by a person other than an owner or authorized user, through the use of viruses, Trojan horses, or other malicious software or infiltration methods;

l. any and all data, information, or images evidencing Internet usage history;

m. any and all data, information, or images that evidence ownership and use of the Facebook Accounts, including, but not limited to, calendar entries, e-mail addresses, stored telephone numbers and names, nicknames, and/or labels assigned to said numbers, photographs, videos, bank account documents, bills and invoices, recorded voice memos, text messages, instant messenger messages, letters, and voicemails stored within said Accounts;

n. any and all data, information, or images evidencing passwords that may be used to unlock or decrypt data, information, or images stored on the device, which may or may not be stored in a locked or encrypted fashion, whether said passwords are letters, numbers, characters, words, or data

2

strings (sequence of characters);

o.  any and all images, Internet histories, Internet site bookmarks, search requests, temporary Internet files, cookies, newsgroups, postings to newsgroups, folder structures and names, and file names stored on the device relating to child pornography (visual depictions of minors engaged in sexual conduct as defined in Penal Law §263.00[3]) or a sexual interest in children;

p.  e-mail containing writing regarding child pornography or a sexual interest in children;

q.  evidence of affiliations, memberships, buddy lists, profiles, chat sessions, chat services, billboards, newsgroups, and websites pertaining to child pornography or a sexual interest in children;

r.  any computer-related documentation, which consists of electronically stored material that explains or illustrates how to configure or use computer hardware, software, or other related items;

s.  any and all records and materials, in any format or media (including, but not limited to, e-mail, instant message chat logs, electronic messages, other digital data files, and web cache information), pertaining to the payment for or possession, receipt, shipment, or distribution of visual depictions of minors engaged in sexually explicit conduct or relating to or demonstrating a sexual interest in children;

t.  any and all records and materials, in any format or media (including, but not limited to, e-mail, instant message chat logs, electronic messages, other digital data files, and web cache information), identifying persons transmitting any visual depiction of minors engaged in sexually explicit conduct or demonstrating a sexual interest in children;

u.  records of communication between individuals concerning the topic of child pornography, having sex with children, the existence of sites on the Internet that contain child pornography or that cater to people with an interest in child pornography, or membership in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to their members and constituents;

v.  evidence of any online storage, e-mail, or other remote computer storage subscription, including, but not limited to, unique software relating to such subscription, storage, or email, user logs, archived data that shows connection to such service, or user login and password for such service; and it is further

**ORDERED,** that this Court grant permission to retrieve the above-described data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device; and it is further

**ORDERED,** that Facebook, Inc. not disclose the existence of this Order or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise directly by the Court.

**ORDERED,** that the affidavit and any transcript of accompanying sworn testimony in support of the application for this warrant be sealed, except that a copy of any such sworn testimony may be obtained by the Kings County District Attorney's Office and the Affidavit and/or any such sworn testimony may be disclosed by an Assistant District Attorney in the Kings County District Attorney's Office in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court;

3

LEAU SW NO. 
Prepared by ADA

and if such property or evidence or any part thereof is found, to seize it, and to return this warrant, and deliver any property seized pursuant thereto, or inventory thereof, without undue delay, to Kings County Supreme Court located at 320 Jay Street, Part Misc. Motions, Brooklyn, New York;

Dated: Brooklyn, New York
November 28, 2017
Time:

NOV 2 8 2017

HON. JONATHAN SCHECHT, J.S.C.

4

LEAU SW NO
Prepared by ADA